## Salter et al. *versus* Bird et al.

1. A trust cannot be established by parol evidence that the grantee in an absolute deed agreed orally to hold the property conveyed upon certain trusts, where it is not shown that the grantee, by means of fraud, artifice, solicitation or persuasion, induced the execution of the deed.

2. Plaintiffs in ejectment offered to prove by parol evidence that their father in his life time conveyed certain premises, by an absolute deed, to A., who agreed orally to hold the same in trust for the plaintiffs; that A., subsequently to their father's death, conveyed said premises, by an absolute deed to B., plaintiff's mother, who agreed that she would hold the same in trust for the plaintiffs; that B. subsequently married the defendant, who, by duress coerced her to convey said premises to him:

*Held*, that the evidence to prove the parol trust was inadmissible under the Act of April 22d 1856, and that the court below therefore properly directed a verdict for the defendant. The trust sought to be proved was not a trust ex maleficio, the offer of proof not alleging any artifice, fraud, or solicitation on the part of B. inducing the execution of the deed to her.

April 25th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Northumberland county:* Of July Term 1882, No. 46.

Ejectment, for three lots of ground in the borough of Shamokin, by Michael Salter and others, children of William Salter, deceased, against William Owen. The latter died before trial, and Samuel Owen and others, his children and heirs at law were substituted as defendants. Plea, not guilty.

On the trial, before ROCKEFELLER, P. J., the court ruled out all the plaintiffs' offers of parol evidence, and directed a verdict for defendants. The plaintiff put in evidence the following deeds, all for the premises in question, and all duly acknowledged and recorded, viz:—

1857, April 1st. C. P. Helfenstein et al. to William Salter. Consideration $500.

1863, August 14th. William Salter and Mary Ann, his wife, to Henry Shipp. Consideration $500.

1864, April 28th. Henry Shipp and Margaret, his wife, to Mary A. Salter. Consideration $500.

1869, March 2d. Mary A. Owen, formerly Mary A. Salter, and William Owen, her husband, to William Morris. Consideration $400.

1869, March 2d.　William Morris and wife to William Owen.

The plaintiffs' offers of testimony, with the objections thereto, and the rulings of the court thereon, were as follows :—

First.　Harry Shipp sworn, and upon the witness stand.

The plaintiffs' counsel propose to prove by this witness that he was the grantee in the deed from William Salter and wife, dated the 14th day of August, 1863.　That prior to the execution and delivery of said deed, William Salter, who was then in ill health, requested him to accept the deed from him and his wife, in trust, and to be held by him in trust for his ten children, until his children paid a certain balance of purchase money, and another small debt, when he desired him to convey it to them ; that he accepted this trust and promised to hold the same in trust for his children, and did so hold until the 28th day of April, 1864, when he executed and delivered to Mary A. Salter, then the widow of William Salter, deceased, a deed for the same lots, in trust for the children of William Salter, for whom he was to hold ; that the deed from him to Mary A. Salter was accepted by her as trustee for the children, and was by her to be held for them as their trustee; that the debts mentioned by William Salter were paid before he made the deed to Mary A. Salter, by the children of William Salter.

This to be followed by proof that the sons of William Salter paid the indebtedness that William Salter had ; that they furnished a large sum of money to improve the property and erect buildings thereon, and that two of them, the present plaintiffs in this case furnished each the sum of five hundred dollars, which went into the improving of this property ; that subsequently in the latter part of 1868, Mary A. Salter, the widow of William Salter, married William Owen ; that she communicated to William Owen that she held this property, to wit: lots one, two and three, in block 197, in trust for the children of her former husband ; that afterward William Owen, her husband, procured secretly two deeds to be written, one from William Owen and Mary A. Owen, his wife, to one William A. Morris, having named therein fraudulently four hundred dollars as a consideration, and another from William A. Morris and wife, back to William Owen.

This is to be followed by proof further, that no purchase money was paid by William A. Morris to William Owen and wife, neither did William Owen pay any money whatever to William A. Morris, as consideration for the conveyance to him.　To be further followed by evidence showing that William Owen admitted that he had done wrong in procuring this deed to be made, depriving or attempting to deprive

[Salter *v.* Bird.]

William Salter's children of the property; that when he was charged with having forced his wife, the former widow of William Salter, to sign the deed from him and her to William A. Morris, he admitted that the deed from him, William Owen and Mary A. Owen, (formerly Salter,) was signed by her under coercion and compulsion; that this fact was known to William A. Morris, and that this trust in favor of the children of William Salter, was also known to William A. Morris; that Mary A. Salter, the widow of William Salter, recognized this trust, and accepted the deed as trustee for the children of William Salter, and was anxious to carry the trust out in good faith and did carry the same out until compelled to execute a deed to William A. Morris; that she protested against signing the deed because she held as trustee, and that the property was the property of her children and not her own.

This for the purpose of showing title in this plaintiff.

The counsel for the defendant object,

1. Because the evidence is in contradiction of the deeds which are already in evidence.

2. That a trust must be evidenced in writing and cannot be established by parol proof alone.

3. That the witnesses, to wit: Mary Salter and any of the parties upon the record in this case, are not competent witnesses to establish the facts or any of them alleged in the offer.

4. That William Owen and William Salter being dead, the evidence is irrelevant and incompetent to affect the interest of either of them.

5. That the offer shows that the conveyance from William Salter to Henry Shipp, was for the purpose of hindering and defrauding creditors, and that neither William Salter nor his children can take advantage of any alleged fraud to affect the deed under which the title is vested in William Owen.

6. That Henry Shipp, being the grantee in the deed from William Salter and the grantor to Mary Ann Salter, is not a competent witness to affect the deed; and Mary A. Salter, being the wife of William Salter, afterwards the wife of William Owen, is not a competent witness to affect any interest of her husband under the conveyance already in evidence.

7. The alleged trust is barred by the statue, as it was created, if at all, in the year 1863.

8. That the plaintiffs propose to show by their own offer that the alleged trust from William Salter to Henry Shipp was simply for the purpose of hindering, delaying and defrauding creditors; and that as between William Salter and Henry Shipp, that deed passed the title, and those claiming under Henry Shipp can hold it against William Salter or his children.

9. Because Mary A. Owen, being the grantor in the deed to

William Salter, cannot be called as a witness for the purpose of defeating her own conveyance.

10. We further object that the offer is complicated and embraces matter which cannot be ruled in reference to the relevancy of the testimony to the competency of the witness upon the stand.

11. Because it appears from the deed from Henry Shipp and wife to Mary A. Salter, that it is a conveyance of general warranty.

The plaintiffs add to their former offer the following :

First. That at the death of William Salter he left to survive him ten children, seven of whom were minors and plaintiffs in this case ; that they continued in possession of the premises during their minority up to and after the marriage with Owen, and the execution of the deed from Morris to him, and those who became of age made it their home and up to the time of the bringing of this suit; that the last minor child, one of the plaintiffs in this case, only arrived at the age of twenty-one years on the fourth of July 1881 ; that five of the plaintiffs were minors at the time of the execution of the alleged deed from Morris to Owen, and that four of the plaintiffs were minors at the time of the institution of this suit.

The counsel for the defendants renew their objections to offer as amended for all the reasons as before stated.

PER CURIAM. It cannot be disputed that if a deed of land be made to A. and B. upon a parol trust that they will hold for the benefit of the grantor or a third person, such parol trust cannot be enforced against the land in consequence of the 4th section of the Act of 22d April 1856, Pamphlet L. 533 : Maffit's Administrators *v.* Rynd, 19 P. F. Smith 386. But if the purchase money is paid by the cestui que trust and he is in possession it is a trust by parol, the title in the trustee and the cestui que trust in possession. The limitation under which a parol trust can be enforced does not apply when the cestui que trust is in possession : Smith *v.* Tome, 18 P. F. Smith 158. The offer perhaps tends to show payment by the cestui que trust of something that was required of them to be paid at the time of the execution of the deed by their father, William Salter, to Henry Shipp. If such payment can be treated as payment of consideration money, then a resulting trust would be established and if the cestuis que trust were in possession, as offered to be proved, the limitation in the Act of 1856 does not apply. I have concluded to receive the evidence and decide upon the effect hereafter. Before the Act of 1869 the witness Henry Shipp would not have been competent to testify, he having given a deed with covenant of general warranty. See the case of Goodman *v.* Losey, 3 W. & S. 526. That Act expressly

declares that no interest or policy of law snall exclude a party or person from being a witness in any civil proceeding, except that the Act, amongst other things, is not to apply when the assignor of the thing or contract in action may be dead. Now, William Salter, the witness's grantor, is dead, and I am of opinion that he, the witness, cannot testify to matters in relation to the deed or transaction that occurred during the lifetime of the deceased. See Arthurs *v.* King et al., 3 Norris 525.

So far as it is proposed to prove by this witness what occurred during the lifetime of William Salter in relation to the deed from said Salter to him is rejected. Exception.

Second. The plaintiffs having shown that Henry Shipp and wife executed a deed, dated the 28th day of April 1864, to Mary A. Salter, now propose to prove by Henry Shipp, the grantor, that he conveyed the said property to Mary A. Salter as trustee for the children of William Salter, deceased; that she accepted the said deed in trust for the children and promised to carry out the said trust with respect to the lots therein conveyed, to wit: 1, 2 and 3 in block 197, in the borough of Shamokin, the said children of Mary A. Salter, and plaintiffs to this suit, having paid certain liens against said property.

This to be followed by evidence showing that at the time this deed was executed and delivered to Mary A. Salter, there were living ten children of William Salter, seven of whom were minors and were residing upon the property; that those children who were at home and of age were also residing there; that in October 1868, the said Mary A. Salter married William Owen; that she communicated to William Owen that she held this property, conveyed by the above deed, in trust for the children of William Salter, her former husband. That afterwards William Owen, her husband, procured secretly and without her knowledge two deeds to be written, one from William Owen and Mary A. Owen, his wife, to one William Morris, having fraudulently named therein four hundred dollars as the consideration, and another from William Morris and wife to William Owen, having fraudulently written therein the consideration of six hundred dollars; that no purchase money was paid by William Morris to William Owen and wife; that William Owen paid no money whatever to William Morris as a consideration for the conveyance back to him.

To be further followed by evidence showing that William Owen admitted that he had done wrong in procuring this deed to be made, depriving or attempting to deprive William Salter's children of the property; that when he was charged with having forced his wife, the former widow of William Salter, to sign the deed from him and her to William Morris, he admitted that the deed from him William Owen and Mary A. Owen,

[Salter *v.* Bird.]

formerly Salter, was signed by her under coercion and compulsion ; that the trust in favor of the children of William Salter was known to William Morris at the time ; that Mary A. Salter, widow of William Salter, recognized this trust and accepted the deed as trustee of the children of William Salter, and was anxious to carry the trust out in good faith and did carry the same out until compelled to execute a deed to William Morris ; that she protested against signing the deed because she held the lots as trustee, and because the property was the property of her children and not her own.

We propose further to show that at the time of the execution of the deed from Henry Shipp to Mary A. Salter there were surviving ten children of William Salter, her former husband, seven of whom were minors and plaintiffs in this case ; that they continued in possession of the premises during their minority up to and after the marriage with Owen and the execution of the deed in favor of Morris to him ; that those who became of age and were unmarried made it their home up to the time of the bringing of this suit ; that one of the said minors only arrived at the age of twenty-one years on the fourth day of July 1881 ; that five of the plaintiffs were minors at the time of the execution of the alleged deed from Morris to Owen, and that four of the plaintiffs were minors at the time of the institution of this suit, and that Mary A. Salter, the trustee, was in possession at the time of the execution of said deed and remained in the possession of these premises from the time of the execution of the deed up to the time of the death of Owen and subsequently to the bringing of this suit.

We propose further to show that in pursuance of this trust the children of William Salter paid off certain debts and liens against the property ; that one of them advanced five hundred dollars, money received by him while a soldier in the army, and another a similar sum, and appropriated it to the improvement of the property ; and that they afterwards applied their earnings in a similar manner.

The counsel for the plaintiffs propose further to show that said Henry Shipp was a brother of Mary A. Salter and uncle to the plaintiffs in this case.

This offered for the purpose of showing title in these plaintiffs and their right to recover in this suit.

The counsel for the defendants object for all of the reasons stated in their former objection, and because it is not offered to be shown that any possession was taken as held under the alleged trust.

By the Court. The only ground upon which the evidence offered could possibly be admissible since the Act of April 26th 1856, is that it may tend to show that Mary A. Salter became a

[Salter *v.* Bird.]

trustee ex maleficio by accepting the deed in trust for the children of William Salter, deceased, and promised to carry out said trust with respect to the property in suit. Perhaps, if it could be shown that she expressly promised to take the deed and hold the title for the children, but afterwards conveyed the property to a third party, the case would come within the ruling in the case of Church and wife *v.* Ruland and wife, 14 P. F. Smith 432, but I very much doubt it. If it is so, then it appears to me that in every instance where an absolute deed of land is made to one, upon a parol trust that he will hold for the use of the grantor, or his children, or a third party, the trust must be enforced against the land notwithstanding the Act of 1856. In the case of Maffit's Administrator *v.* Rynd, 19 P. F. Smith 386, and Barnet *v.* Daugherty, 8 Casey 371, it was held that such a trust is not enforceable. I am of opinion that the mere proof that there was a parol trust at the time of the execution of the deed, there being no purchase money paid, and no fraud in obtaining the title, the grantee only agreeing to hold the land for the benefit of another, cannot be proved by parol. Such a trust must be manifested in writing.

The objections are sustained and the evidence rejected. Exception.

Third. *Mary A. Owen on the stand but not sworn.*

The plaintiffs' counsel propose to prove by this witness that she was the widow of William Salter, and the mother of the ten children left to survive him in 1863, plaintiffs in this case; that a few days before the death of her husband, William Salter, a deed was made by William Salter and herself, to wit: on the 14th day of August, 1863, to Henry Shipp; that her husband, William Salter, and herself executed this deed to Henry Shipp in trust for the said children of Mary Salter, and upon the express promise of Henry Shipp that he would accept the deed in trust for the children, and that he would convey it to them upon the payment by them of certain liens and small debts against the real estate named by him; that Henry Shipp accepted the trust and promised to carry the trust out. The said Salter, relying upon this promise and reposing confidence in the said Henry Shipp, his brother-in-law, he executed and delivered the said deed; that afterwards the said debts and liens were paid by the plaintiffs, the children of William Salter, for whom the property was held in trust, and that Henry Shipp, the grantee in said deed, on the 28th day of April, 1864, with his wife, executed and delivered to her the deed for the same property, being the lots in question one, two and three, in block 197, in Shamokin borough, in trust for said children, and upon her promise that she would hold the same as their trustee for their benefit, and that she promised to ac-

cept the said trust as their trustee and hold it for them in trust ; and that upon this promise the said deed was delivered to her ; that in pursuance of this trust, and under this deed, she and a portion of her children have been in possession of said premises from that day until suit was brought ; that at the time of the death of William Salter, and making of the said deed to Henry Shipp, and the reconveyance to her in trust for the said children, seven of the said children were minors, and that the last one of the said children arrived at the age of twenty-one years on the 4th of July 1881.

That in addition to the payment of the debts and the liens spoken of, two of the said children contributed the sum of one thousand dollars out of the pay for their service as soldiers in the army, and transmitted their pay also as soldiers, which was used in enlarging and improving the buildings and upon these lots of ground ; that their earnings subsequently were appropriated in the same manner ; that these payments were made and improvements erected by the said children prior to her marriage with William Owen, on the 31st day of October 1868.

This is for the purpose of showing the right of the plaintiffs in this suit to recover in this action.

The defendants counsel object for all the reasons before stated and because the witness is incompetent to testify to any matter arising between her and her husband, William Salter, deceased, or William Owen, deceased, her husband, and because she is incompetent to affect the title under the deeds already in evidence.

We further object because the offer is in substance the same as that which the court has already overruled.

PER CURIAM.   The court has already ruled, see offer No. 1, that plaintiffs can prove the matter set forth in this offer in order to establish a resulting trust at the time of the execution of the deed from William Salter to Henry Shipp, although I now doubt the correctness of such ruling as the evidence offered could scarcely be said to show the payment of consideration money at the time of the execution of the deed, but we are of opinion that the witness is incompetent to testify to the matters offered to be proved.

The objections are sustained ; exception.

Fourth.   William Heaton on the stand.

In connection with offer No. 2, the plaintiffs propose to prove by this and other witnesses that William Morris, to whom William Owen and wife made a deed on the 2d day of March 1869, admitted that he paid no money or other valuable thing as consideration for the said deed to him, and that no money was needed ; and that Mary A. Owen, the wife of William Owen, at that time was compelled to sign the deed and execute it through compulsion of her husband.

Also, that William Owen, grantee in the deed from William Morris and wife, dated the 2d day of March 1869, when charged, in the presence of witnesses, with having compelled his wife to sign the deed to William Morris, admitted that he had done so and that it was wrong; and when his wife at this time charged him with having compelled her to sign the deed, stated that he knew he did, and at the time he thought it was right; that she had done nothing wrong; that he did it all; that he was sorry for it and hoped the plaintiffs would forgive him, and that he would see the children made all right and the lots conveyed back to him.

This for the purpose of showing that the defendants are trustees ex maleficio, and that William Owen, their father, from whom they derived their interest, if they have any, was fully cognizant that the property was the property of the plaintiffs, held in trust for them by Mary A. Salter, and also to show the plaintiffs' right to recover.

The defendants' counsel object for all the reasons heretofore stated in offers Nos. 1, 2 and 3.

And also because,

(a.) The court has already decided that a trust cannot be created by parol without violating the provision of the Act of Assembly of 1856.

(b.) Because the court has already ruled that evidence of a similar character to that contained in this offer would not create a trust ex maleficio; that the trust, if any created, would be in violation of the provisions of the Act of Assembly of 1856.

(c.) That it is not proposed to prove by this offer that the defendants in this case, who are the children of William Owen, were present at or assented to, or had any knowledge of any transaction between William Owen and William Morris or either of them; that they cannot be affected by any acts or declarations of William Owen or William Morris made in their absence, and that no such conversation can make them trustees ex maleficio of the land in dispute.

(d.) Because it is not competent to establish a trust by mere declarations of the vendee in a deed absolute upon its face.

(e.) Because the declarations of William Owen, proposed to be proven, would not make him a trustee ex maleficio and such declarations would not be competent evidence to establish a trust.

By the Court. The objections are sustained, the evidence rejected, and the plaintiffs except.

The court charged the jury as follows :—" Inasmuch as there is no evidence before the court and jury tending to show title

[Salter *v.* Bird.]

to the property in question in the plaintiffs in this case, we direct you to find a verdict in favor of the defendants."

Verdict, accordingly, for the defendants, and judgment thereon. The plaintiffs took this writ of error, assigning for error the rejection of their several offers of evidence as above.

*S. P. Wolverton* and *Samuel Linn,* for the plaintiffs in error.—The witness, Henry Shipp, though the grantor in the general warranty deed of April 28th 1884, to Mary A. Salter, was called to testify against his interest and he was therefore competent ; he would have been competent before the Act of 1869. If we had been permitted to prove our offer (which must here be accepted as proved) that Mary A. Salter accepted the deed from Shipp under the express promise that she would hold the title in trust for the plaintiffs and would convey to them, and she refused or neglected to fulfill the promise on the faith of which it was executed, we contend that a court of equity would enforce the trust and compel a conveyance in accordance with its terms. Does the fact that William Owen, her subsequent husband, coerced her into the execution of a deed to him, in violation of the trust and with the full knowledge of its provisions, place him or his children in any better position than she was ? She, Owen and his children, the defendants, would be trustees ex maleficio, and not protected by the statute of frauds and perjuries ; and ejectment is the proper remedy to enforce such a trust : Church *v.* Ruland, 14 P. F. S. 432 ; Jones *v.* McKee, 3 Barr 496 ; s. c., 6 Barr 425 ; Hoge *v.* Hoge, 1 Watts 163 ; Seichrist's Appeal, 16 P. F. S. 237 ; Morey *v.* Herrick, 6 Har. 128 ; Miller *v.* Pearce, 6 W. & S. 97 ; Beegle *v.* Wentz, 5 P. F. S. 374 ; Lingenfelter *v.* Ritchey, 8 P. F. S. 488 ; Perry on Trusts §§ 181, 217, 226 ; Christy *v.* Sill, 14 Norris 386. The limitation in the Act of 1856 does not apply, because the plaintiffs were minors at the time of their father's death, and had no guardian. Five were minors at the date of the deed to Owen, and four were minors when this suit was begun ; their possession of the premises preceded the trust relation, and the limitation did not begin to run : Clark *v.* Trindle, 2 P. F. S. 492 ; Smith *v.* Tome, 18 P. F. S. 158 ; Webster *v.* Webster, 3 P. F. S. 161 ; Williard *v.* Williard, 6 P. F. S. 119.

*W. H. Armstrong* (with him *W. H. M. Oram* and *Henry C. Parsons*), for the defendants in error.—The parol evidence offered was not admissible to establish the alleged trust, which was not within the class of trusts ex maleficio : Act of April 22d 1856 ; Barnet *v.* Dougherty, 8 Cas. 371 (frequently affirm-

ed); Thorne, McFarlane & Co. *v.* Warfflein, 4 Out. 519.  Henry Shipp and Mary Salter were incompetent witnesses: Goodman *v.* Losey, 3 W. & S. 526; Crouse *v.* Staley, 3 W. N. C. 83; Murray *v.* N. Y., &c. R. R. Co., 13 W. N. C. 213.

Mr. Justice Gordon delivered the opinion of the court, October 1st 1883.

When an action of ejectment is brought, two things are necessarily presupposed; one is that the plaintiff is not in the possession of the land described in the writ, and the other is, that the defendant is in the possession of the land so described. The action is, in its character, possessory; it cannot be maintained by one having the possession of the property, neither can it be maintained against one who has not possession.  Moreover, the cardinal principle governing actions of this kind is, that the plaintiff must recover, if at all, on the strength of his own title and not upon the weakness of that of his adversary. The defendant has, in the first instance, nothing whatever to do; upon his possession he may securely rest until the plaintiff shows a better right, and until such right has been shown he cannot be disturbed.  From this it follows, that as to the status of the parties to this suit, at the time of the issuing of the writ, there can be no debate; the defendants were in the possession of the property, and the plaintiffs were not, and to have successfully proposed any thing else would simply have been to put the plaintiffs out of court.  Such being the case the rule applies that until the plaintiffs show a better right to that possession, than that of the defendants, the latter cannot be disturbed in the occupancy of the controverted premises.  It would, however, not be a fair presentation of this case to say that the defendants rest solely on their possession, for they have shown a regular prima facie title from William and Mary Ann Salter, the common grantors through William Owen to themselves.  The question then remains; have the plaintiffs shown title in themselves? And for the purposes of this case, it must be conceded that they could have proved what they offered to prove.  Now the material part of the plaintiffs' offers amounts to this; that William Salter, on the 14th of August 1863, voluntarily executed a deed for the premises in controversy, to Henry Shipp, who agreed orally to hold the same in trust for Salter's ten children until they paid a certain balance of purchase money and another small debt; that he did so hold it until said indebtedness was paid by Salter's sons, and then, upon the 28th of April 1864, deeded it to Mary A., then widow of William Salter, under a verbal agreement or understanding, that she would hold it in trust for the aforesaid children.  We may here stop; for by passing over the proof proposed for the purpose of impeaching

her deed to her second husband, William Owen, we not only avoid a question involving the admissibility of her testimony, but by an admission of title in their alleged trustee, put the case on the best possible grounds for the plaintiffs.

But, when all this is admitted, we have in Mrs. Salter (Owen), but a parol trust, which by force of the 4th section of the Act of the 22d of April 1856, was void from its inception. "All declarations or creations of trusts or confidences," reads the statute, "of any lands, tenements or hereditaments, and all grants and assignments thereof shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else be void." This language is all embracing, and so clear and positive that the legislative intent cannot be mistaken.

Unless, therefore, this case can be brought within that provision of the statute which excepts trusts resulting from legal implication, or construction, commonly called resulting trusts, the plaintiffs have no title. But in order to accomplish this result, it must be shown that Mrs. Salter obtained the deed to the property in dispute by some kind of fraud or artifice which induced its execution. But nothing of the kind has been proposed. All that is alleged is that she agreed to hold it in trust for her children. But we cannot see how it would be possible to create a parol trust under any other conditions. If such a trust is not within the statute, then there can be none that comes within it. For if a deed, like the one before us, absolute on its face, be made to one who receives it and does not agree to hold it in trust, there is, and can be, no trust for the statute to operate upon; the transaction begins and ends in an unqualified conveyance. Bound, therefore, as we must be by the spirit and letter of the statute, we can but repeat what was held as law in the case of Barnet v. Dougherty, 8 Ca. 372, that a resulting trust can only arise from some fraudulent act by or through which the title had been obtained, or by the payment of the money of the alleged use party for the purchase of the property at the time when the conveyance is made, and that neither subsequent fraud nor subsequent payment will avail to raise such a trust.

Nor is this case at all like that of Church v. Ruland, 14 P. F. S. 432, where the devise was made through the active solicitation and persuasion of the devisee, and under the solemn promise that at her death one half of it should go to her sister's children. Mrs. Salter took no active part in the creation of this trust. It is not pretended that she, by either solicitations or promises, induced the execution of the deed from her husband to Shipp or from Shipp to herself. Therefore, though the above case goes far towards the destruction of a most valuable

[Weidenhamer *v.* Bertle.]

statute, especially designed for the quieting of titles to real estate, yet it does not go far enough to cover this case.

But it is urged that she is willing to execute this trust; if so, it follows, that neither in act nor even in intent, has she been guilty of a fraud prior or subsequent to the execution of the deed from Shipp to herself. How then can she be said to be a trustee ex maleficio? And what is there to prevent the operation of the statute? And if the title to the premises in question, and the right of possession, are in Mrs. Salter, how can the plaintiffs who have neither, maintain ejectment? Nor can we understand why they have undertaken such an experiment as this, when according to their own showing, they might have had her title for the asking. A title which, if the proposed proof be taken as true, never passed out of her. If the deed of March 2d 1869, executed by herself and husband to William Morris, was without consideration, and designed, as it appears to have been, simply as a means employed to pass her title to her husband, and if, in addition, it can be made to appear that she did not voluntarily execute and deliver that instrument, then, as between herself and the heirs of her late husband, the transaction was a fraud on her rights, and was wholly inoperative and nugatory. Clothed with her title, the plaintiffs would have had a good standing to maintain their action, and if they could have established the above stated proposition, by the necessary facts, they would, no doubt, have gotten a verdict for the premises in dispute. Standing, however, as they now do, without title, they cannot of right complain of the rulings of the court below.

The judgment is affirmed.

Trunkey and Sterrett, JJ., dissented.