This action was originally begun 26 October, 1881, by William (464) E. Horne against Burrell Horne and John A. Buchanan. William E. died, and his executors, devisees and heirs at law were made parties plaintiff. Burrell also died, and his heirs at law were made parties defendant. The executor of William then died and his personal representative was made a party plaintiff, and under an alleged power contained in the will of W. E. Horne, sold the land in controversy to Josiah Hamilton and others, who were, by order of the court, substituted as plaintiffs in this action.
The plaintiffs claim the land under William E. Horne, who purchased the same at sale under execution against Burrell Horne in 1841 — the sheriff's deed being dated January, 1843.
Defendants aver that William E. Horne agreed, before or at the sale, to let his brother have the land or the benefit of it whenever the amount bid by him should be repaid; that he also agreed with Burrell after the sale to the same effect, and also made the same agreement with the father of Burrell for and on behalf of the latter, and that the amount bid by William has been repaid. They also plead the statute of limitations against the present plaintiffs.
A jury being duly impaneled, the defendants tendered and insisted upon the following issues:
1. Did William E. Horne agree by parol, before he bid off the land in controversy at sheriff's sale, that he would take title to said land *Page 353 
and hold the same for Burrell Horne, and that Burrell Horne should have the land or the benefit of the land whenever the bid of William E. Horne on said land was paid?
2. Did William E. Horne agree, after he bid off the land at sheriff's sale, that Burrell Horne should have the land as soon as or whenever he paid back to William E. Horne, or was paid back for him, the amount bid by W. E. Horne for said land? (465)
3. Was it agreed by W. E. Horne and his father, for and in behalf of Burrell Horne, that he, Burrell Horne, should have the land as soon as W. E. Horne was paid back whatever he bid and paid for the land?
4. Was there an agreement between W. E. Horne and Burrell Horne before W. E. Horne bid off the land, and after he bid off the land, and was it part of the purchase of said W. E. Horne that Burrell Horne was to have the land when he, or any one for him, paid the amount bid by W. E. Horne for said land?
5. Was there an agreement between W. E. Horne and his father, acting for Burrell Horne, before and after W. E. Horne bid off the land, that Burrell Horne was to have the land back from W. E. Horne as soon as the land was paid for by Burrell Horne, or by some one acting for him or in his behalf?
6. Has the amount paid for said land, the subject of this action, by W. E. Horne as and for the price of said land, and as and for his bid therefor at said sale, been paid to W. E. Horne, and was it paid to him before this action was commenced for Burrell Horne, or some one acting for Burrell Horne?
7. Was any part of the money paid by W. E. Horne for said land paid back to him, before the suit was begun, by Burrell Horne or some one for him or in his behalf?
8. Does any part of the money paid by W. E. Horne for said land remain unpaid; was W. E. Horne the owner of said land; are the plaintiffs the owners of any part of said land; was the money paid by W. E. Horne for the land paid in full, and W. E. Horne accepted it as such in full payment for the land?
The court refused the foregoing issues tendered by the (466) and settled the following as the proper issues:
1. Did William E. Horne purchase the land described in the complaint in trust for Burrell Horne, upon the agreement that on the repayment to William E. Horne by Burrell Horne of the amount of the bid said land should be reconveyed by said William E. Horne to said Burrell Horne? *Page 354 
2. If so, has the said Burrell Horne heretofore paid, or caused to be paid, to said William E. Horne the amount of the said bid?
3. Is the defendant's equitable defense barred by the lapse of time?
4. Is the plaintiff's cause of action barred by the lapse of time?
5. What is the annual rental value of the land described in the complaint?
The defendants excepted to the refusal of the court to adopt their issues tendered and to the issues as framed and settled by the court.
Plaintiffs introduced (1) deed from Joseph White, sheriff of Anson County, to William E. Horne, dated 12 January, 1880, conveying the land in controversy; (2) will of William E. Horne, dated 3 October, 1879, and probated 30 June, 1882; (3) deed from C. N. Simpson, administrator d. b.n., c. t. a., to M. L. Horne and others (plaintiffs), dated 24 February, 1891.
Defendants objected to the introduction of the will on the ground that the land is not described therein, and to the introduction of the deed of Simpson, administrator, etc., on the ground that the same is made to parties not named in the original summons, and because they had no title until it was given in February, 1891, and because the order made at Spring Term, 1891 (substituting the grantees in said deed as plaintiffs), was made contrary to law. Both objections were (467) overruled, and defendants excepted.
It was admitted that William E. Horne was the owner of locus inquo when the will was made, if there were no trust relations between him and Burrell Horne.
J. J. Billingsley, for defendants, testified: "In the early part of 1880 had conversation with William E. Horne, about the time Burrell Horne and John A. Buchanan went into the house on the land. He seemed to think it was all right as to Burrell's being there, but not as to Buchanan. Said he came to Wadesboro one day, and after he arrived in town learned that Burrell's land was to be sold by the sheriff. He bid it off and paid the money for it, and took deed for it that same evening. He went home, passed his father's house, took out the deed and said to his father, `Here, father, you take the deed and pay me back my money, and you do what you please with Burrell's land.' Said he did not want anything to do with it. Said that his father remarked that if he took the deed, paid the money, and gave the deed to Burrell it would be sold again. That his father told him to keep the deed and he would pay him back. W. E. Horne said he had been paid. Old man said he wanted his son Burrell to have a home. W. E. Horne said Burrell had gone crazy and run off, and that he rented the land to get pay on other accounts due him by Burrell. Said Burrell had sold Joel *Page 355 
Gaddy some of the land. That Gaddy came to him to sign the deed. That he told Gaddy it was Burrell's land. Heard W. E. Horne and George W. Little talking about the repair of division fence between Little and locus in quo. Horne told Little not to cut any oak for the purpose, as his brother Burrell might come back and want wood. Burrell Horne was insane many years of his life. Don't know how long. He wandered about a great deal. Not competent while in this State to attend to business." (468)
Cross-examined: Witness said William E. Horne had charge of the land a good many years, and rented it to one Tillman. Had it while witness lived at G. W. Little's, and he lived at Little's from 1870 to 1876. W. E. Horne was a man of large estate.
Dilsey Horne testified that she "belonged to Burrell Horne a while, and afterwards to W. E. Horne. Burrell Horne gave me to W. E. Horne to pay for some land. Don't know when it was now, nor for what land."
Cross-examined: Don't know how old I am. Don't know how long I lived with W. E. Horne. Belonged to Ephraim Horne, father of W. E. Horne and Burrell Horne, before I belonged to them. Burrell was mightily in debt. Sheriff was after what he had when he turned me over to W. E. Horne."
J. C. McLaughlin testified: "Knew Burrell Horne since 1865. Since that time he was insane until he died, in 1884. Character of J. J. Billingsley good."
Defendants also introduced deed from Burrell and W. E. Horne to Joel Gaddy, dated 27 January, 1846, conveying five acres alleged to be a part of the land purchased by William at the sheriff's sale.
In reply, plaintiffs introduced a mortgage deed from Burrell Horne to W. E. Horne, dated 13 May, 1843, conveying the crops to be grown on the land on which Burrell lived to secure a loan of $250 from William E.
There was evidence that the land mentioned in this deed is locus in quo.
Defendant objected to this deed because it only conveyed personal property, and because there was no allegation in the pleadings that made it competent.
Objection overruled, and exception by defendants.
W. L. White proved handwriting of Sheriff Joseph White, and (469) two receipts of Sheriff White were introduced, reading as follows:
"Received of William Horne one hundred and seventy-four dollars and fifteen cents in part of the purchase of Burrell Horne's land, and *Page 356 
in full of the balance of a fi. fa. in my hands, H. B. Hammond v. said B. Horne, and a judgment in favor of John B. Cottrell. This 10 March, 1841. J. WHITE, Sheriff."
Above is the date of the sale of the land.
"$73.77.
"Received of William Horne seventy-three dollars and seventy-seven cents, in part payment for the sale of Burrell Horne's land, sold at March court last. 30 May, 1841. J. WHITE, Sheriff."
He further testified that Dilsey Horne, an old negro woman, is very ignorant and feeble-minded, but her character is good.
F. A. Clarke proved handwriting of Y. H. Allen, and receipt was introduced by him as follows:
"Received of J. White, sheriff, fifty-two dollars sixty cents, paid to me by said White for William Horne on account Burrell Horne's land. Sold this court, 14 March, 1841. Y. H. ALLEN."
J. D. Horne testified that the father of W. E. and Burrell Horne died in 1842.
Bill of sale from Burrell Horne to W. E. Horne for Dilsey Horne, the witness, was introduced, dated 3 January, 1843.
To this defendant excepted.
The court directed the jury to answer the first and fourth issues (470) "No," and instructed the jury to assess the damages for plaintiffs.
To the instruction of the court to answer the first issue in the negative the defendants excepted. After verdict and judgment for the plaintiffs, the defendant appealed.
The plaintiffs claim the land in controversy under William E. Horne, who acquired the legal title by virtue of his purchase at a sale under execution against Burrell Horne in March, 1841, the sheriff having executed a deed on 21 January, 1843. The defendants, who are the heirs at law of the said Burrell Horne, allege that the said William E. Horne purchased the land in trust for their ancestor, and that the terms of the trust having been complied with, they are the equitable owners of and entitled to remain in possession of the same.
We think there was no error in the rejection of the issues tendered by defendants, and that in no view of the case could they have been prejudiced by those submitted by the court. The issue involving the *Page 357 
existence of the trust is in entire conformity with the answer and sufficiently broad to comprehend an agreement made either directly with Burrell Horne or with his father acting in his behalf. As to any parol agreement, made after the sale, to convey to Burrell Horne, it is clear that it would be void under the statute of frauds, and the issue tending to establish the same was immaterial and properly refused. Even had there been error in respect to the issues, it would be no ground for a new trial, as we are of the opinion that his Honor was correct in holding that there was no sufficient evidence to establish the alleged trust. In order to establish a parol trust, in a case like the present, (471) the proof must not only be strong and convincing (McNair v. Pope,100 N.C. 404), but it must also disclose an agreement amounting to a trust existing at the time of the sale.
Without entering into a discussion of the testimony, we will state our conclusion that we can find nothing which brings the case within the foregoing principle. There is an entire absence of direct testimony tending to show any agreement whatever with Burrell before the sale, and the conversation with the father of Burrell after the sale very clearly fails to disclose the existence of any such agreement made with him in behalf of his said son. The manner in which the parties dealt with the land, taking the most favorable view for the defendants, is not inconsistent with an agreement made subsequently to the sale and similar in terms to that offered to the father, which was that he, the father, should take the sheriff's deed and pay the said William his money.
In view of this defect in their case, the counsel for the defendants advanced the position that the land having been purchased by William, the brother of Burrell, and the latter being insane, a trust grew out of the relationship of the parties. Huguenin v. Basely, cited by counsel (2 White Tudor L. C. Eq., 1156), does not sustain the contention, as there is no evidence of any dealing between the brothers in reference to the sale of the land by the sheriff, and there is no suggestion of fraud or undue influence, even had it been shown that there was any such dealing. The relationship existing between brothers is not in itself a confidential relation to which the equitable doctrine of constructive trusts is applicable, and in the absence of circumstances tending to show that William actually occupied a position of trust to his brother or took a fraudulent advantage of his infirmity, we can see no reason why he should not be permitted to purchase his land at an (472) execution sale as well as any other person. It may also be noted that there is no testimony showing that Burrell was insane at the time of the sale in 1841, the only positive testimony upon the subject being that he was insane after 1865. *Page 358 
As to the statute of limitations, it is sufficient to say that, having failed to establish the alleged trust or to show any other title, the defendants and their ancestor must be deemed to have occupied the land as tenants at sufferance, in which case their possession is not considered as adverse to William E. Horne, the purchaser at the execution sale, or those who claim under him. Hardy v. Simpson, 44 N.C. 325; Spencer v. Weatherly,46 N.C. 327.
We have carefully considered all of the other exceptions of the defendants and are of the opinion that they cannot be sustained.
NO ERROR.
Cited: Faison v. Hardy, 114 N.C. 60; Cobb v. Edwards, 117 N.C. 250;Avery v. Stewart, 136 N.C. 431; Taylor v. Wahab, 154 N.C. 223.
(473)