ANNIS et al., Respondents, v. HUGGINS et al., Appellants.

(152 N. W. 114.)

(File No. 3583.    Opinion filed April 12, 1915.    Rehearing denied
June 19, 1915.)

1.  Trusts—Trust in Realty—Establishment—Parol Evidence, Com-
petency—Statute.

Under Civ. Code, Sec. 302, requiring, as a condition to the
validity of a trust in realty, its creation by a writing subscribed
by trustee, or by an instrument under which trustee claims the
estate, and Sec. 1614, authorizing (subject to provisions of Sec.
302) creation of a voluntary trust, as to trustee, by his words
or acts indicating with reasonable certainty his acceptance
thereof, and the subject, purpose and beneficiary, held, that
evidence of statements made by the alleged trustee, in his life-
time, tending to show the donor's desire for an equal distribu-
tion of all her property, real and personal, was incompetent,
and a trust based thereon cannot be sustained.

2.  Trusts—Establishment—Voluntary Trust—Beneficiary, Certainty
as to—Trustee's Discretion—Trust in Personalty—Evidence—
Statute.

Where a wife had, by absolute warranty deed, conveyed
realty to her husband, and, the husband surviving, and through
whom plaintiff's traced title, wrote plaintiffs, who were rela-
tives of the deceased wife, that she had left some money and
property in his hands to be turned into money and given to
plaintiffs "mostly," as he might think right, that under the law
"there would be nothing, but I don't think I want it so.    I will
study out the best thing and do it," his wife having left every-
thing to him, and thereafter he sent each of plaintiffs a draft
with a letter reciting that it was plaintiff's share, that he was
following his wife's directions in the distribution as he under-
stood her,—two relatives, however, being omitted.    Held, that
under Civ. Code, Sec. 1614, authorizing creation of a voluntary
trust, as to trustee, subject to Sec. 302, requiring that it be
created by written instrument, by acts or words of trustee indi-
cating, with reasonable certainty, his acceptance of the trust,
the purpose and the beneficiary, there was no valid trust; that
there was uncertainty as to who were beneficiaries; that discre-
tion was vested in the alleged trustee as to what property, if
any, was to be received by the respective beneficiaries; and the
recitals in the second letter could not be taken as a repudiation
of the husband's determination of his right to exercise discretion
in the disposition of the property.    Held, further, that if it is
permissible to admit oral evidence to show that the sums paid
constituted all of the wife's money, such evidence is not admis-

sible to bolster up the claim that thereby any of her realty was to be distributed solely and equally among plaintiffs.

3.   **Trusts—Establishment—Trust in Realty—Certainty as to Amount —Discretion in Trustee.**

Where the amount that each of the plaintiffs was to receive was uncertain, depending wholly upon the discretion of the alleged trustee, and where the evidence showed the property was given to the trustee himself and that his judgment as to its disposition was substituted for that of the alleged donor, held, that no trust in realty was created or declared.

4.   **Trusts—Creation—Operation of Law—Assertion of Ownership in Trustee.**

Where the wife conveyed land by absolute warranty deed to her husband, who, after her death, wrote to plaintiffs, her relatives, informing them that she had left in his hands some money and property to be turned into money and distributed as he thought right, that under the law "there would be nothing, but I don't think I want it so. I will study out the best thing and do it," and he thereafter enclosed drafts to plaintiffs, informing them that he had made distribution according to her directions as he understood them, though several relatives were in fact omitted, held, that the so-called declaration asserted ownership in himself, with a discretion as to who were to be beneficiaries and as to what share, if any, each was to receive, and there was created no trust by operation of law.

Appeal from Circuit Court, Clark County. Hon. CARL G. SHERWOOD, Judge.

Action by Adelbert B. Annis and others against Flora E. Huggins and others, to enforce an alleged trust in property in favor of plaintiffs. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed and remanded.

*O. H. Ames,* and *R. A. Dunham,* for Appellants.

*L. W. Crofoot,* and *E. C. Ryan,* for Respondents.

(1) Under point one of the opinion, Appellant submitted that: Parol evidence is not admissible to establish a trust; and cited: Cyc., Vol. 39, IIA, 8, b (11) p. 82; Vol. 1 of Hilliard on Real Property, 4th Ed., 425; Greenl. on Ev., Vol. 1, Sec. 286; Mee v. Mee, 113 Tenn. 453, 82 S. W. 830, 106 A. S. R. 865; Chambers v. Roseland, 21 S. D. 298, 112 N. W. 148; Meyer v. Pecor, 18 S. D. 466, 101 N. W. 39. The letters in question do not establish a trust. Civ. Code, Sec. 302; Murphy v. Cook, 11 S. D. 47, 75 N. W. 837; Reagan v. McKibben, 11 S. D. 270,

76 N. W. 944; Warvelle on Vendors, Sec. 463, 556, pp. 664, 668; Sheedy v. Roach, 124 Mass. 472, 26 Am. Rep. 680; Renz v. Stoll et al, (Mich.) 54 N. W. 276; Smullin v. Wharton, (Neb.) 103 N. W. 294; Perry on Trusts (Chap. 3, No. 83).

Respondents submitted that: Parol evidence is admissible, and cited: Jones on Evidence, Sec. 323 (327); Johnson v. Calman, 34 Pac. 905 (Colo.); Hayne v. Hermann, 32 Pac. 171 (Calif.) 28 Amer. & Eng. Encyc. of Law, 887. Exhibit "A" establishes a trust. Waterbury v. Fisher, 38 Pac. 846 (Colo.); Civ. Code, Sec. 302, 1614, 374, 375, 376, 377; Lynch v. Rooney, 44 Pac. 565 (Calif.); Moore v. Ransdell, 53 N. E. 767 (Ind.).

(4) Under point four of the opinion, Respondents submitted that: The evidence shows a trust created by operation of law.

GATES, J.  One Ledyard Verdine Lewis wrote a letter, Exhibit A, to the plaintiff L. Annis Pound (designated in the letter as "Lou") announcing the death of his wife, a sister of the plaintiffs. In the letter he said:

"Ada left some money in my hands, and some property to be turned into money and given to Dep, Ella and Lou mostly, as I see or think right. Under the laws there would be nothing, but I do not think I want it so. I will study out the best thing and do it. She left everything to me and she rarely said anything about you or her sisters or Dep. I am left rather in the dark about doing the work."

He afterwards wrote to the same plaintiff a letter, Exhibit B, inclosing a draft for $283.44, in which he stated:

"I am sending you herewith a draft on Chicago for $283.44, your share of money left in my hands, for distribution by Ada. I am following her directions in the distribution, as I understood her. * * * It may be that Emma and Harvey will think it hard to be left out in this deal, but I think Ada thought it would be doing more good the way she said it."

The persons mentioned in Exhibit B as Emma and Harvey were another sister and brother of the deceased. At the same time he wrote Exhibit B, Mr. Lewis also wrote a letter to the plaintiff Adelbert B. Annis (designated in Exhibit A as "Dep"), inclosing a draft for $283.44 and a letter to the plaintiff Ella M. Rogers (designated in Exhibit A as "Ella"), inclosing a draft for

the same amount.   These letters are the same as. Exhibit B, ex-
cept as to name and address.   A few days before her death Mrs.
Lewis conveyed to her husband by warranty deed, 160 acres of
land in Clark county, S. D.   Within a year thereafter, and with-
out having made any disposition of the land, Mr. Lewis died in-
testate, leaving his father as his sole heir at law.   The father ex-
ecuted a conveyance of the land to his daughter, the defendant
Flora E. Huggins, which deed was delivered to one Warner, to
be held until the father's death and then recorded.   Upon the
father's death the deed was recorded.   Flora E. Huggins then
conveyed the land to the defendant Huggins Realty Company.
It was stipulated at the trial that, at the time of such conveyance,
this corporation had notice of the claim of the plaintiffs as to the
alleged trust, and was not a bona fide purchaser for value with-
out notice.   It was, and is, the contention of plaintiffs that the
letters above referred to constitute a declaration of trust by Mr.
Lewis as trustee for the sale of the above described land and the
equal division of the proceeds thereof among the plaintiffs.   Trial
was had to the court, which found that the deed of the land from
Mrs. Lewis to her husband—

"was made without consideration other than the agreement of the
said Ledyard Verdine Lewis to carry out said trust, and, al-
though an absolute deed upon its face, it was given in trust only
for the said Ledyard Verdine Lewis to sell said real property
and convert the same into money and then to distribute and pay
said money derived from such sale equally between these plain-
tiffs."

Judgment was entered accordingly, and from the judgment
and order denying a new trial, the defendants Flora E. Huggins
and the Huggins Realty Company appeal.

[1, 2] Assuming, without deciding, that parol evidence was
admissible to identify the land in question as being the property
which Mr. Lewis described in Exhibit A. as "some property to
be turned into money," there nevertheless remain two controlling
reasons why the decision of the trial court cannot be sustained,
viz.; first, because of the uncertainty as to who were to be the
alleged beneficiaries; and, second, because of the discretion of the
trustee as to what portions of the property, if any, they were to

receive. The provisions of the Civil Code applicable to this case are as follows:

"Sec. 302. No trust in relation to real property is valid, unless created or declared:

"1. By a written instrument, subscribed by the trustee or by his agent thereto authorized by writing.

"2. By the instrument under which the trustee claims the estate effected [affected]; or,

"3. By operation of law."

"Sec. 1614. Subject to the provisions of section 302, a voluntary trust is created, as to the trustee, by any words or acts of his, indicating with reasonable certainty:

"1. His acceptance of the trust, or his acknowledgment, made upon sufficient consideration, of its existence; and,

"2. The subject, purpose and beneficiary of the trust."

Taking up the first reason, and eliminating, for the present, any claim of beneficial interest in the property by the trustee, the declaration plainly shows that the alleged beneficiaries are uncertain. The discretion of the trustee must be invoked to determine who the beneficiaries are to be. The direction by Mrs. Lewis is to give the property "to Dep, Ella, and Lou mostly as Mr. Lewis sees or thinks right," certainly vested in him the right to determine to whom he would give the property. It was the husband's judgment in the matter that was to be the determining factor—not her own. Evidence was introduced as to statements made by Mr. Lewis in his lifetime tending to show that it was Mrs. Lewis' wish that all of her property should be equally divided between the three persons who are plaintiffs in this action. Such evidence was incompetent under our statutes, and a trust based thereon cannot be sustained. The existence of the trust, so far as the real estate is concerned, must stand or fall upon the recitals of Exhibits A and B. If this action had been brought against Mr. Lewis in his lifetime, it is clear to us that no trust in the real property could have been decreed. The language of the New York Court of Appeals on this subject in the Tilden Will case is clear and comprehensive, and applies to the case under consideration:

"By an eforceable trust is meant one in which some person or class of persons have a right to all or a part of a designated

fund, and can demand its conveyance to them, and in case such demand is refused may sue the trustee in a court of equity and compel compliance with the demand. In this case the testator devolved upon his executors the duty of selecting the benefiiciary, and there is no person who has the right to enforce that duty or demand any part of the estate in case the executors refuse or neglect to act. The power attempted to be vested in the trustees cannot be controlled or enforced; and, whether the provisions of the will relating to the residuary estate be regarded as creating a trust or power in trust, they are in either case void." Tilden v. Green, 130 N. Y. 29, 65, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487; Perry on Trusts (6th Ed.) §§ 116, 248-253; Underhill on Trusts and Trustees, pp. 19, 20, 328-330.

But it is urged that the language of Exhibit B sets the matter at rest, and that it thereby appears that it was Mrs. Lewis' wish that all of the property be divided equally between the three plaintiffs. In the first place, there is no clear and satisfactory evidence that the money paid to the three plaintiffs constituted all of the money which Mrs. Lewis had at her death. The only satisfactory evidence in the case is to the effect that each of the plaintiffs received the same sum; but if, for the purpose of establishing a trust in personal property, it was proper to admit parol evidence tending to show that such sums constituted all of the money left by Mrs. Lewis, it is not permissible to use such evidence to bolster up the claim that thereby any real property which Mrs. Lewis might have had in mind was to be distributed solely and equally to the three plaintiffs. Nor are the recitals of Exhibit B to be taken as a repudiation of the assertion by Mr. Lewis in Exhibit A of his right to exercise discretion in the disposition of the property. Exhibit B related solely to money. That letter, interpreted with Exhibit A is, in effect, simply a declaration that it was Mrs. Lewis' wish that whatever money he decided to give the three plaintiffs out of the particular money she left in his hands should be divided equally between them, to the exclusion of the other brother and sister.

[3] It seems clear to us, not only that the beneficiaries were uncertain, but that the amount each was to receive was uncertain, dependent entirely upon the discretion of Mr. Lewis as to

whether he would give them anything at all; and, if he did, what the particular sum or share should be. The declaration, Exhibit A, plainly shows that anything Mr. Lewis might do thereunder was entirely voluntary on his part. The property was given to him. His judgment as to its disposition was to be substituted for hers. If he thought best, he could keep it all. If the substance of the provisions of Exhibit A had been incorporated in the deed from Mrs. Lewis to her husband, it is clear that there would have been no trust established. Mee v. Mee, 113 Tenn. 453, 82 S. W. 830, 106 Am. St. Rep. 865. There was, in fact, no trust in real property created, nor was any trust therein declared. Whatever the property was that was referred to in Exhibit A as "some property to be turned into money," ownership thereof was asserted by Mr. Lewis and the right to dispose of the same as he saw fit. Knapp v. Publishers, 127 Mo. 53, 29 S. W. 885; Cook v. Barr, 44 N. Y. 156; Renz v. Stoll, 94 Mich. 377, 54 N. W. 276, 34 Am. St. Rep. 358; Sheedy v. Roach, 124 Mass. 472, 26 Am. Rep. 680; 39 Cyc. 58, 82; Warvelle on Vendors, §§ 563, 566; Perry on Trusts (6th Ed.) § 83.

[4] Respondents further contend that, regardless of the sufficiency of Exhibits A and B to show a valid declaration of trust, nevertheless a trust arose by operation of law. Such claim is not well founded. We know nothing by competent evidence as to the acts of Mrs. Lewis in this behalf, except that she gave her husband a warranty deed of the land, and that she requested her husband to do the things recited in Exhibits A and B. The only way we can perceive in which a trust, by operation of law, could arise in this case would be: first, by assuming that the property was sufficiently identified in exhibit A; and, second, by construing the terms of Exhibit A as negativing any assertion of interest in the property by Mr. Lewis. If the words "under the laws there would be nothing" be ignored, and the words "she left everything to me" be interpreted as meaning simply that Mrs. Lewis left the disposition of everything to her husband, then the trust would be void under the principle announced in the Tilden decision. Whether in such case a trust by operation of law would arise for the benefit of Mrs. Lewis' heirs at law, or whether the property would absolutely belong to Mr. Lewis, it is unnecessary for us to say, for we cannot ignore any part of Ex-

hibits A or B.  We must construe every part of them together. So construing them, we are of the opinion that the words "she left everything to me" means "that she left all of her property to her husband."  And it is our judgment that Mr. Lewis' so-called declaration of trust asserted ownership of the property in himself, together with a discretion in himself as to who were to be the beneficiaries and as to what share, if any, each was to receive. Therefore there can be no question of a trust by operation of law in this case.

The judgment and order appealed from are reversed, and the cause is remanded, for further proceedings not inconsistent herewith.

McCOY, P. J. (concurring).  I am of the view that the evidence is wholly insufficient and incompetent to show that Mrs. Lewis conveyed the real property in question to her husband in trust.